1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL GONZALEZ,  )<br>                              )<br>         Plaintiff,   )<br>                              )<br>    v.                    )<br>                              )<br>MICHAEL ASTRUE, Commissioner of  )<br>Social Security,          )<br>                              )<br>         Defendant.    )<br>                              )<br>_____ ) | 1:11-cv-01460 LJO GSA<br><br>**FINDINGS AND RECOMMENDATIONS**<br>**REGARDING PLAINTIFF'S SOCIAL**<br>**SECURITY COMPLAINT** |

## BACKGROUND

Plaintiff Paul Gonzalez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his applications for disability insurance and supplemental security income benefits pursuant to Titles II and XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Gary S. Austin, for findings and recommendations to the District Court.

//
//

1

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed applications for benefits in May 2008, alleging disability as of May 26, 2005.[2]  AR 110-122.  Plaintiff's applications were denied initially and on reconsideration; he then requested a hearing before an Administrative Law Judge ("ALJ").  AR 70-74, 78-85.  ALJ Nancy Lisewski held a hearing and subsequently issued an order denying benefits on April 2, 2010, finding Plaintiff was not disabled.  AR 16-26.  On June 27, 2011, the Appeals Council denied review.  AR 1-3.

### Hearing Testimony

ALJ Lisewski held a hearing on February 8, 2010, in Fresno, California.  Plaintiff appeared and testified; he was assisted by attorney Gina Fazio.  Vocational Expert ("VE") Cheryl Chandler also testified.  AR 31-51.

Plaintiff lives with his fiancé and two sons in an apartment.  AR 43.  He completed the ninth grade, but did not earn a GED.  When asked whether he could read the newspaper, Plaintiff replied "somewhat."  He is five feet, nine inches tall and weighs 295 pounds.  AR 40.  A few years ago he weighed 275 pounds, which he considers his normal weight.  AR 41.

In response to an inquiry by the ALJ about the cane he was carrying, Plaintiff indicated he slipped and fell in 2003 and injured his back.  As a result of the injury, he was unable to continue working.  His condition worsens every day.  AR 35-36.  When asked whether any doctor prescribed the cane, Plaintiff replied, "No, MediCal wouldn't cover it, no."  AR 38.  Plaintiff indicated his treating physician, Dr. Bautista, referred him to an orthopedist, but MediCal will not cover that.  AR 38.  He has been using the cane for two to three years because it is difficult to walk due to back pain.  AR 39.  He uses the cane at home, and also uses a walker to get out of bed, although it was not prescribed by a physician either.  AR 42.

---

[1]References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[2]Plaintiff's previous applications were denied by ALJ Gary J. Lee on May 25, 2005.  *See* AR 16, 55-63.

Plaintiff testified he gets migraine headaches every other week, connected to pain in his neck. He has a disc bulge in his neck and one in his lower back. AR 39. He has had x-rays and MRIs and his doctors are "stumped right now" and cannot do anything. AR 41. His right leg is also numb and he believes it is sciatica. AR 39. The numbness in his leg began two or three years ago and is getting worse. AR 39-40. He also has problems grasping with his left hand (he is right-handed) and is waiting to see a specialist because something is "wrong with [his] nerve or something." AR 40. He has trouble reaching overhead because of a torn "socket" on the right side and arthritis in the shoulder. AR 41-42.

When asked to describe a typical day, Plaintiff indicated that he wakes up between five and six every morning, then uses the bathroom to vomit and to take his pain medications. Then he sits and waits for the medications to take effect. Medication side effects include vomiting, sweats, and diarrhea. AR 43. Plaintiff does not perform the household chores; his son helps out around the house. AR 43. When asked what he did all day, Plaintiff indicated he does therapy exercises while seated for fifteen minutes every other day. He also watches television for about six hours a day while lying on his side on the couch. AR 45.

Plaintiff can sit, with medication, for about a half an hour; without medication, he can sit for fifteen minutes. He can walk about four blocks with pain. AR 44. He can lift a ten pound bag of potatoes and a gallon of milk. AR 44-45. His fiancé helps him with bathing and showering because he needs help getting in and out of the enclosure. AR 46. Plaintiff uses marijuana for his back pain and is hoping to get a prescription for it, but the physicians at Fresno Health would not sign the necessary paperwork. AR 46.

Although he takes medication for depression, Plaintiff is not receiving mental health counseling. AR 45. He believes his depression has an effect on his ability to work. AR 45-46. He used to be able to "do everything" and now he feels helpless and hopeless. AR 46.

Plaintiff wishes he could have surgery or get help for his pain so that he could "try to get back to normal," and so that he could play with his children outside. AR 47.

3

1   VE Chandler identified Plaintiff's past work as follows:  security guard, semi-skilled and

2   light, DOT[3] 372.667-034, with an SVP[4] of three; general laborer, unskilled and heavy, DOT

3   519.686-010, with an SVP of two; and furniture assembly installer, semi-skilled and heavy, DOT

4   739.684-082, with an SVP of four.  AR 48.

5   In the first hypothetical question, the VE was asked to consider an individual of

6   Plaintiff's age, education and experience, who can perform jobs with an SVP of one or two, who

7   can lift and carry ten pounds frequently and occasionally, and who can sit, stand and/or walk for

8   six hours in an eight-hour day.  AR 49.  VE Chandler indicated such an individual would be

9   unable to perform Plaintiff's past work.  AR 49.  However, such an individual could perform the

10   work of: (1) usher, light and unskilled, DOT 344.677-014, with approximately 10,100 jobs

11   available in California; (2) ticket-taker, light and unskilled, DOT 344.677-010, with

12   approximately 9,300 jobs available in California; and (3) cashier, eroded by eighty-percent to

13   accommodate the ten-pound weight limitation, light and unskilled, DOT 211.462-010, with

14   approximately 20,000 jobs in California.  National figures are obtained by multiplying the

15   statewide numbers by nine.  AR 49.

16   In a second hypothetical, VE Chandler was asked to consider an individual of Plaintiff's

17   age, education and experience, who can perform jobs with an SVP of one or two, with the total

18   ability to stand and walk for two hours in an eight-hour workday and sit for two hours in an

19   eight-hour workday.  AR 49.  The VE indicated such an individual would be unable to perform

20   any work.  AR 50.

21   With an additional limitation imposed upon the first hypothetical by Plaintiff's counsel,

22   wherein an individual would be required to use a cane for standing and walking, VE Chandler

23   indicated that such an individual would be unable to perform any of the jobs she previously

24   identified.  Instead, the individual would be limited to unskilled, sedentary work.  There are

[3]"DOT" refers to the Dictionary of Occupational Titles.

[4]"SVP" refers to Specific Vocational Preparation.

4

approximately 85,000 such positions available in California.  AR 50.  Next, Plaintiff's counsel asked the VE to consider a further limitation of limited grasping with the non-dominant hand; VE Chandler indicated no work would be available for such an individual.  AR 50.

**Medical Record**

The entire medical record was reviewed by the Court.  AR 242-759.  The medical evidence will be referenced below as necessary to this Court's decision.

**ALJ's Findings**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard.  AR 16-26.

More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 26, 2005.  AR 19.  Further, the ALJ identified lumbosacral strain secondary to mild degenerative disc disease of the lumbar and cervical spines, obesity and sleep apnea as severe impairments.  AR 19-20.  Nonetheless, the ALJ determined that the severity of the Plaintiff's impairments or combination of impairments did not meet or exceed any of the listed impairments.  AR 20.

Based on her review of the entire record, the ALJ determined that Plaintiff has the RFC to perform light work, limited to simple and repetitive jobs with an SVP of one or two, and the ability to lift and carry, frequently and occasionally, ten pounds only, and to sit, stand and walk for six hours in an eight-hour workday.  AR 20-24.

Next, the ALJ determined that Plaintiff was not capable of performing his past relevant work.  AR 24.  Nevertheless, the ALJ determined Plaintiff could perform the work of an usher, ticket taker or cashier.  AR 24-25.  Thus, the ALJ concluded Plaintiff was not disabled.  AR 25-26.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

1    this Court must determine whether the decision of the Commissioner is supported by substantial

2    evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla,"

3    *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

4    *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

5    reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

6    401.  The record as a whole must be considered, weighing both the evidence that supports and

7    the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993,

8    995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

9    apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

10   This Court must uphold the Commissioner's determination that the claimant is not disabled if the

11   Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

12   substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

13   Cir. 1987).

14                                        **<u>REVIEW</u>**

15        In order to qualify for benefits, a claimant must establish that he is unable to engage in

16   substantial gainful activity due to a medically determinable physical or mental impairment which

17   has lasted or can be expected to last for a continuous period of not less than twelve months.  42

18   U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

19   such severity that he is not only unable to do her previous work, but cannot, considering his age,

20   education, and work experience, engage in any other kind of substantial gainful work which

21   exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

22   The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

23   Cir. 1990).

24        Here, Plaintiff argues that the ALJ (1) erred in her consideration of Plaintiff's obesity;

25   and (2) erred in rejecting the treating physician's opinion.  (Doc. 21 at 4-7.)

26

27

28                                            6

1          **DISCUSSION**[5]

2          *The ALJ's Consideration of Obesity*

3          Plaintiff argues that the ALJ did not properly evaluate his obesity because she failed to

4   consider the effects obesity would have on the RFC or evaluation of his mental impairments and

5   subjective pain complaints.  Specifically, Plaintiff contends that the ALJ failed to conduct an

6   analysis pursuant to Social Security Ruling ("SSR") 02-1p.  (Doc. 21 at 4-6.)  The Commissioner

7   counters that the ALJ's treatment of this issue was proper.  (Doc. 22 at 7-8.)

8          Plaintiff correctly notes that pursuant to SSR 02-1p, obesity must be considered

9   throughout the sequential evaluation process, including when determining an individual's RFC.

10  "The combined effects of obesity with other impairments may be greater than might be expected

11  without obesity."  SSR 02-1p.  However, Plaintiff neither cited to nor applied any relevant case

12  law on this issue.  The Ninth Circuit held that pursuant to SSR 02-1p, the ALJ must consider

13  obesity in determining a RFC based on the information in the case record.  *Burch v. Barnhart*,

14  400 F.3d 676, 683 (9th Cir. 2005); *Celaya v. Halter,* 332 F.3d 1177 (9th Cir. 2003).  In *Celaya*,

15  the Ninth Circuit reasoned that the ALJ should have considered the claimant's obesity as a

16  disabling factor, even when it was not expressly argued by the claimant, because obesity was

17  raised impliedly in Celaya's report of symptoms.  Moreover, the Court held it was clear that

18  Celaya's obesity was close to the listing criterion and was a condition that could exacerbate her

19  reported illness.  Because Celaya was proceeding pro se, the ALJ had a duty to develop the

20  record regarding her obesity.  *Celaya v. Halter*, 332 F.3d at 1182.

21         However, in *Burch v. Barnhart*, the Ninth Circuit determined there was no reversible

22  error when an ALJ found that the claimant's obesity, in combination with her other impairments,

23  did not meet a listing.  *Burch v. Barnhart*, 400 F.3d at 682-683.  In doing so, the Court noted that

24

25         [5]The parties are advised that this Court has carefully reviewed and considered all of the briefs, including
26  arguments, points and authorities, declarations, and/or exhibits.  Any omission of reference to a specific argument or
    brief is not to be construed that the Court did not consider the argument or brief.

27

28                                    7

1    an "ALJ is not required to discuss the combined effects of a claimant's impairments or compare

2    them to any listing in an equivalency determination, unless the claimant presents evidence in an

3    effort to establish equivalence." *Id*.

4           Here, although Plaintiff argues the ALJ erred, he fails to specify how his obesity limits

5    his functional capacity, how it exacerbates his current existing condition, or that he can establish

6    equivalency to a listing impairment.  Absent quoted portions of the relevant SSR, Plaintiff's

7    entire argument on this issue consists of two paragraphs.

8           Notwithstanding the above, it is clear that the ALJ did in fact consider Plaintiff's weight

9    in her analysis.  For example, the ALJ identified Plaintiff's obesity as a severe impairment at step

10   two.  AR 19.  Moreover, the ALJ noted her consideration of SSR 02-1p at step three.  AR 20.

11   The ALJ also expressly noted as follows: "The claimant's weight is 304 pounds and the height is

12   5'9".  Thus, the undersigned considered the effects of the claimant's obesity when reducing the

13   claimant's residual functional capacity, as assessed in finding 5 . . .."  AR 24, internal citation

14   omitted.  Plainly, the ALJ considered Plaintiff's obesity in her RFC determination.

15          Additionally, this Court's review of the medical record revealed that while there are

16   numerous references to Plaintiff's obesity, objectively there is little evidence that Plaintiff was

17   limited by the condition.  Despite complaints of low back pain and occasional chest pain, x-rays,

18   MRI, CT scans and other objective testing revealed only mild impairment in Plaintiff's back, and

19   largely normal findings in other areas.

20          Thus, it is clear that the ALJ factored Plaintiff's obesity into her overall assessment that

21   Plaintiff is capable of light work with limitations.  In sum, the ALJ's consideration of Plaintiff's

22   obesity was proper.  *See Burch v. Barnhart*, 400 F.3d at 682-83.

23   //

24   //

25   //

26

27

28                                                8

1

***The Treating Physician Opinion***

2     Plaintiff contends the ALJ erred by giving insufficient reasons to reject the December 8,

3    2009, opinion of J. Luis Bautista, M.D., Plaintiff's treating physician.  (Doc. 21 at 6-7.)  The

4    Commissioner asserts, however, that the ALJ properly discounted Dr. Bautista's 2009 opinion.

5    (Doc. 22 at 9-13.)

6     Cases in this circuit distinguish among the opinions of three types of physicians: (1) those

7    who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

8    (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining

9    physicians).  As a general rule, more weight should be given to the opinion of a treating source

10   than to the opinion of doctors who do not treat the claimant.  *Winans v. Bowen*, 853 F.2d 643,

11   647 (9th Cir. 1987).  At least where the treating doctor's opinion is not contradicted by another

12   doctor, it may be rejected only for "clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d

13   1391, 1396 (9th Cir. 1991).  Even if the treating doctor's opinion is contradicted by another

14   doctor, the Commissioner may not reject this opinion without providing "specific and legitimate

15   reasons" supported by substantial evidence in the record for so doing.  *Murray v. Heckler*, 722

16   F.2d 499, 502 (9th Cir. 1983).

17    The opinion of an examining physician is, in turn, entitled to greater weight than the

18   opinion of a nonexamining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990);

19   *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984).  As is the case with the opinion of a treating

20   physician, the Commissioner must provide "clear and convincing" reasons for rejecting the

21   uncontradicted opinion of an examining physician.  *Pitzer*, 908 F.2d at 506.  And like the opinion

22   of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor,

23   can only be rejected for specific and legitimate reasons that are supported by substantial evidence

24   in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

25    The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence

26   that justifies the rejection of the opinion of either an examining physician or a treating physician.

27

28                                                    9

1   *Pitzer v. Sullivan*, 908 F.2d at 506 n.4; *Gallant v. Sullivan*, 753 F.2d at 1456.  In some cases,

2   however, the ALJ can reject the opinion of a treating or examining physician, based in part on the

3   testimony of a nonexamining medical advisor.  *E.g., Magallanes v. Bowen*, 881 F.2d 747, 751-55

4   (9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir.

5   1995).  For example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a

6   treating physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to

7   reject the opinions of Magallanes's treating physicians . . .."  *Magallanes*, 881 F.2d at 752.

8   Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ also

9   relied on laboratory test results, on contrary reports from examining physicians, and on testimony

10  from the claimant that conflicted with her treating physician's opinion.  *Id*. at 751-52.

11         Here, ALJ Lisewski found as follows:

12         The claimant's treating physician, Lois Bautista, M.D., completed a
           "Medical Report-Verification of Physical/Mental Incapacity-General Assistance"
13         form for the claimant on 6/17/08.  Dr. Bautista, however, opined that the claimant
           can work.  The claimant has full capacity to lift, push, and pull up to 30 pound[s]
14         as well as full capacity for continuous sitting, standing and overhead work.  In
           addition, the record shows that Dr. Bautista completed a "Medical Release and
15         Report" form for the Department of Child Support Services on 12/8/2009.  Dr.
           Bautista opined that claimant should never lift more than 10 pounds and he is
16         unable to sit or stand for long periods of time.  At that point, Dr. Bautista found
           that claimant is unable to return to work.  He needs to be fully evaluated by a
17         specialist.  Claimant has chronic lower back pain, anxiety and depression.  His
           prognosis is fair.
18         . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
           As for the opinion evidence, the undersigned has given significant weight
19         to the opinion of the internal medicine examiner, who identified the lack of
           specific objective findings supporting claimant's persistent pain in the back and
20         the neck.  Likewise, the undersigned has given substantial weight to the opinion of
           the psychiatric examiner in identifying claimant's abilities to complete simple and
21         repetitive tasks.  Further, the undersigned gives [] significant weight to the
           6/17/08 report of Dr. Bautista stating that the claimant can work and he has full
22         capacity to lift, push and pull up to 30 pound[s] as well as full capacity for
           continuous sitting, standing and overhead work.  The 12/8/2009 opinion by Dr.
23         Bautista is given a little weight as this opinion is not supported by the objective
           medical findings in the record and is based on the claimant's subjective
24         allegations and appears to be an accommodation.  In addition, [it] is inconsistent
           with the record as a whole and the record shows no changes that explain the
25         significantly different functional assessments from Dr. Bautista.

26  AR 22-23, internal citations omitted.

27

28                                              10

1   ALJ Lisewski gave sufficient reasons for rejecting the 2009 opinion of Dr. Bautista.

2   Specifically, the ALJ indicated that the opinion (1) was not supported by objective medical

3   findings; (2) was based upon Plaintiff's subjective complaints and appeared to be an

4   accommodation; and (3) was inconsistent with the medical record as a whole, particularly where

5   the record did not serve to explain the significant differences between Dr. Bautista's opinion in

6   2008 versus that in 2009.

7   A brief and conclusory form opinion which lacks supporting clinical findings is a

8   legitimate reason to reject a treating physician's conclusion.  *Magallenes v. Bowen*, 881 F.2d

9   747, 751 (9th Cir. 1989).  Further, a physician's opinion that is based to a large extent on a

10   claimant's own accounts of symptoms and limitations may be disregarded where those subjective

11   complaints have been properly discounted by the ALJ.[6]  *See Morgan v. Commissioner of Social*

12   *Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999).

13   Additionally, the ALJ gave significant weight to the opinion of the internal medicine

14   examiner, Samuel B. Rush, M.D.  Dr. Rush's physical examination findings revealed largely

15   normal findings.  More particularly, Dr. Rush recorded range of motion findings regarding

16   Plaintiff's cervical and lumbar spine, and noted the hips, knees, ankles and feet were normal.

17   Plaintiff was able to get on and off the examination table "fairly easily" and walked normally.

18   Grip strength in both hands was an "excellent 5 on a scale of 5."  Plaintiff gait was normal, as

19   was his balance.  AR 396.  Dr. Rush assessed massive obesity, mechanical low back pain,

20   degenerative arthritis of the neck and back with normal range of motion, as well as a history of

21   anxiety and depression, hypertension and hyperlipidemia.  Dr. Rush opined that Plaintiff had "no

22   specific objective decrease in range of motion of any joint tested," and was capable of routine

23   sitting, standing and walking, and could use both hands for simple grasping and fine

24   manipulation, pushing and pulling.  AR 397.  A contrary opinion of an examining source can

26   [6]Notably, Plaintiff has not asserted any argument that the ALJ's findings with regard to credibility are
27   erroneous.

28   11

1  constitute a specific and legitimate reason for rejecting the opinion of a treating source.  *See*

2  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Andrews v. Shalala*, 53 F.3d 1035,

3  1041 (9th Cir. 1995) ("Where the opinion of the claimant's treating physician is contradicted,

4  and the opinion of a nontreating source is based on independent clinical findings that differ from

5  those of the treating physician, the opinion of the nontreating source may itself be substantial

6  evidence; it is then solely the province of the ALJ to resolve the conflict".)

7      In sum, Plaintiff's argument simply lacks merit.  The objective medical record does not

8  support Dr. Bautista's 2009 opinion, and the reasons offered by the ALJ for rejecting that opinion

9  are specific and legitimate.  The x-ray, MRI and CT scan reports, dated between June 2008 and

10  December 2009, evidence nothing more than mild or slight degenerative changes without

11  evidence of spinal stenosis or nerve root compression.  *See* AR 333, 392, 462-465, 523-524, 533,

12  590, 724.  Thus, the ALJ's finding in this regard is free of legal error and is supported by

13  substantial evidence.

14                                   **RECOMMENDATION**

15      Based on the foregoing, the Court finds that the ALJ's decision is supported by

16  substantial evidence in the record as a whole and is based on proper legal standards.

17  Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision

18  of the Commissioner of Social Security be DENIED and that JUDGMENT be entered for

19  Defendant Michael J. Astrue and against Plaintiff Paul Gonzalez.

20      These findings and recommendations will be submitted to the Honorable Lawrence J.

21  O'Neill pursuant to the provisions of Title 28 of the United States Code section 636(b)(l).

22  Within fifteen (15) days after being served with these findings and recommendations, the parties

23  may file written objections with the Court.  The document should be captioned "Objections to

24  Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file

25

26

27

28                                        12

1 objections within the specified time may waive the right to appeal the District Court's order.

2 *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

3

4    IT IS SO ORDERED.

5 **Dated:**   **January 16, 2013**          _____/s/ **Gary S. Austin**_____
                                              UNITED STATES MAGISTRATE JUDGE
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                      13